IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSOL ENERGY INC. and EIGHTY-FOUR MINING CO., <br>       Plaintiffs, <br><br> vs. <br><br> BERKSHIRE HATHAWAY INC. and NATIONAL FIRE & MARINE INSURANCE COMPANY, <br>       Defendants. | Civil Action No. 05-199 <br> Judge Joy Flowers Conti <br> Magistrate Judge Amy Reynolds Hay |

AMENDED REPORT AND RECOMMENDATION

I.     Recommendation

It is respectfully recommended that the motion for remand submitted on behalf of Plaintiffs (Docket No. 26) be granted and that this case be remanded to the Court of Common Pleas of Allegheny County, Pennsylvania. It is further recommended that the motion to dismiss submitted on behalf of Defendant Berkshire Hathaway Inc. (Docket No. 21) and the motion to dismiss or stay and compel arbitration submitted on behalf of Defendant National Fire & Marine Insurance Company (Docket No. 23) be dismissed as moot.

II.     Report

Plaintiffs, CONSOL Energy Inc. ("CONSOL") and Eighty-Four Mining Company, bring this action against Defendants, Berkshire Hathaway Inc. ("BH") and National Fire & Marine Insurance Company ("National Fire"), seeking a declaratory judgment and alleging claims of breach of contract, breach of fiduciary duty and bad faith under Pennsylvania law for their delays and failure to pay insurance claims for property damage and business losses arising out of a mine fire that occurred on January 6, 2003 and their attempts to alter the terms of the insurance policy so as to avoid coverage.

Presently before this Court for disposition are three motions: a motion for remand, brought by the Plaintiffs; a motion to dismiss on the grounds of lack of personal jurisdiction and to dismiss Count V of the First Amended Complaint, brought by BH; and a motion to dismiss or stay and to compel arbitration, brought by National Fire. For the reasons that follow, Plaintiff's motion for remand should be granted and the case should be remanded to the Court of Common Pleas of Allegheny County, Pennsylvania. BH's motion to dismiss and National Fire's motion to dismiss or stay and to compel arbitration should be dismissed as moot.[1]

Facts

In June 2002, CONSOL began seeking insurance coverage for the July 1, 2002 through July 1, 2003 time period and for this purpose it retained Marsh USA, Inc. ("Marsh") to serve as its broker. It sought $150,000,000.00 in insurance coverage as well as certain "Time Expense Coverage" which included, inter alia, business interruption coverage. (Compl. ¶¶ 14-15.) CONSOL and Marsh prepared a "Property Insurance Specification" package which identified the insurance coverage that CONSOL sought, including a list of underwriting specifications that set forth the desired coverage, the proposed deductibles and other terms and conditions for the insurance placement. They then submitted this package to prospective insurance providers. (Compl. ¶¶ 16-17.)

During June 2002, Marsh received binders of coverage, effective July 1, 2002, from various insurance providers. These binders consisted of the Underwriting Specifications included in the "Property Insurance Specification" package with some revisions. One binder

---

[1] On December 22, 2005, a Report and Recommendation was filed (Docket No. 41), recommending that Plaintiffs' motion for remand be denied but that BH be dismissed from this case as having been fraudulently joined, that BH's motion to dismiss be dismissed as moot and that National Fire's motion to dismiss or stay and compel arbitration be denied. Upon consideration of the objections filed by the parties and the responses thereto, this Amended Report and Recommendation is being filed. It supersedes the Report and Recommendation filed on December 22, 2005.

identified the "Insurer" as "National Fire and Marine," a subsidiary of BH.  (Compl. ¶¶ 24-25, 27 & Ex. B.)  Plaintiffs allege that:

> Berkshire Hathaway controls National Fire and Marine such that National Fire and Marine is the alter ego of Berkshire Hathaway and National Fire and Marine's corporate veil should be pierced and Berkshire Hathaway held liable for the actions or conduct of both itself and National Fire and Marine.

(Compl. ¶ 26.)

The binders established primary coverage of $50,000,000.00 (reduced from the $150,000,000.00 originally sought by CONSOL) with an underground sub-limit of $25,000,000.00 and $100,000,000.00 in excess coverage with respect to CONSOL's preparation plant.  (Compl. ¶ 28.)  The binders set forth the total premium for CONSOL's coverage in the amount of $8,000,000.00 and indicated each insurer's level of participation in the coverage.  Specifically, the level of participation for National Fire was 40%, the level for Allied World Assurance Company Ltd. ("AWAC") was 20%, the level for Commonwealth Insurance Company ("CIC") was 10%, the level for International Mining Industry Underwriters, Ltd. ("IMIU") was 12% (subsequently this participation was transferred to International Insurance Company of Hannover Ltd. ("IICH")), the level for Lloyd's of London's syndicates (consisting of Hiscox Syndicates, Ltd. ("HS"), Ascot Underwriters, Ltd. ("AU") and R.J. Kiln & Co., Ltd. ("RJK") was 8%, and the level for XL Insurance (Bermuda) Ltd. ("XL") was 10%.  (Compl. ¶¶ 32-34.)

CONSOL accepted the coverage identified in the binders by remitting to National Fire through Marsh the requested total premium of $8,000,000.00.  Plaintiffs allege that this action created coverage until policy language consistent with the binders was finalized.  (Compl. ¶¶ 35-36.)  On or about October 23, 2002, Marsh forwarded to Guy Carpenter, a subsidiary of Marsh and wholesale broker that dealt directly with National Fire to place coverage for CONSOL, a copy of the policy form to be signed by National Fire (the "Policy Form").  (Compl. ¶¶ 22, 39.)

On February 5, 2003, National Fire requested that certain corrections be made to the Policy Form to correct what it perceived to be discrepancies between the terms of its binder and its Policy Form. (Compl. ¶ 42 & Ex. C.) Plaintiffs note that the lead underwriter was IMIU, but allege that BH informally took over the discussion regarding policy language and acted on behalf of the other underwriters in dealing with CONSOL over policy language. (Compl. ¶¶ 21, 41.)

On March 14, 2003, after reviewing the corrections requested by National Fire, CONSOL and Marsh agreed to all but one of them, which addressed the level of National Fire's participation. (Compl. ¶ 43 & Ex. D.) Plaintiffs allege that the Policy Form, as amended by the binder and by the March 14, 2003 agreement of the parties, constitutes the final insurance policy in effect between National Fire and CONSOL. (Compl. ¶ 44.)

On or about April 10, 2003, National Fire submitted to Guy Carpenter a "marked up" version of the policy as well as seven pages of "Policy Declarations." The "marked up" policy contained several alterations to the policy, one of which was the deletion of the Consequential Damages Provision. In addition, the Policy Declarations, which stated that they would prevail in the event of any discrepancy between them and the policy, included a provision which required that any and all disputes concerning the policy be submitted to binding arbitration. Plaintiffs allege that this provision was not previously discussed and that there was no agreement between the parties to submit disputes to arbitration. (Compl. ¶¶ 45-47 & Exs. E-F.)[2]

Plaintiffs allege that, between April 10 and April 15, 2003, Guy Carpenter informed National Fire in writing that the suggested alterations to the policy and the Policy Declarations as a whole were unacceptable. (Compl. ¶ 48.) In addition, on May 9, 2003, Marsh informed Guy Carpenter by e-mail that the Policy Declarations were unacceptable, that the policy would be

---

[2] National Fire contends that it sent a complete copy of its policy, including the Policy Declarations, to Guy Carpenter on March 25, 2003. (Snover Aff. ¶ 4 & Exs. B-C, Docket No. 35.)

based on terms and conditions of the policy as agreed upon, and that the Consequential Damages Provision would not be deleted.  (Compl. ¶¶ 49-50 & Ex. G.)

As of February 2004, Marsh and CONSOL had not agreed to the modifications requested by National Fire in the "marked up" policy and the Policy Declarations.  On February 3, 2004, National Fire presented to Marsh and Guy Carpenter a proposed endorsement to the policy, which attempted to impose additional terms and conditions on the policy which were inconsistent with the binder and the terms already agreed upon.  (Compl. ¶¶ 53-54 & Exs. H- I.)  Plaintiffs allege that these proposed changes claimed to be an amendment to the Policy Declarations but that they had not agreed to the Policy Declarations; that they attempted to impose additional restrictions on the Business Interruption Provisions, modify the "Premises Insured" clause of the policy and add an arbitration clause that had not been agreed to by Marsh or CONSOL; and that they were submitted after the policy term had ended and after CONSOL had submitted two claims under the policy.  (Compl. ¶¶ 55-57.)  They further allege that the proposed endorsements were presented to delay the processing of CONSOL's claims and to change policy language to provide Defendants with a basis to deny CONSOL's two claims.  (Compl. ¶ 58.)

On February 4 and 10, 2004, Marsh informed Guy Carpenter that CONSOL did not agree to the attempted modifications reflected in the proposed endorsement.  (Compl. ¶ 59 & Exs. J-K.)  On February 12, 2004, Marsh provided Guy Carpenter with a summary of the modifications to the policy to which Marsh and CONSOL had agreed and a list of items to which they did not agree, including: 1) the modification of the Consequential Damages Provision; 2) the modification of the Loss Adjustment wording; 3) the Policy Declarations; and 4) the proposed endorsement.  (Compl. ¶¶ 60-61 & Ex. L.)

Subsequently, Guy Carpenter prepared an addendum ("Addendum No. 9") that set forth these items and CONSOL's proposed modifications to address them.  (Compl. ¶ 62 & Ex. N.)

5

Addendum No. 9 deleted the "Premises Insured" clause set forth in the Policy Declarations, added a $250,000.00 per occurrence sub-limit for Loss Adjustment Expenses and provided a description of the Loss Adjustment Expenses coverage provided by the policy. On February 24, 2004, National Fire informed Guy Carpenter that it would not agree to the modifications proposed in Addendum No. 9. (Compl. ¶¶ 65-67 & Ex. O.)

Upon receipt of Addendum No. 9 on March 1, 2004, Marsh informed Guy Carpenter that it believed that both the Policy Declarations and the addendum were unnecessary and should be removed. Guy Carpenter responded that it would be better to adopt the Policy Declarations and modify them than to amend the policy itself. (Compl. ¶¶ 69-70 & Exs. P-Q.)

<u>The 84 Mine Fire</u>

CONSOL's subsidiary, Plaintiff Eighty-Four Mining Company, owns and operates the 84 Mine located in Washington County, Pennsylvania. The 84 Mine was included on the list of property submitted by CONSOL in the "Property Insurance Specification" package. (Compl. ¶¶ 37-38.) The 84 Mine was producing 14,500 tons of coal per day and employed approximately 400 miners. (Compl. ¶ 71.)

On January 6, 2003, a severe fire began at the 84 Mine and production at the mine ceased. CONSOL used its own employees to assist with fire fighting activities and to rehabilitate the mine to return it to operating condition. (Compl. ¶¶ 72-74.) CONSOL continued to pay these employees their ordinary pay as well as overtime pay for their service in rehabilitating the mine. As a result of using its own employees, CONSOL reduced its need to hire outside contractors to perform this work and expended less money than had it not used its own employees to rehabilitate the mine. (Compl. ¶¶ 75-76.)

As a result of the fire, several chains were damaged and subsequently failed. These chains were integral components of the longwall mining equipment at the mine and their failure

6

caused delays in the mining process, resulting in lost profits. In addition, the closing of the mine during the fire and the repair and remediation process interrupted the operation of the mine and caused CONSOL lost business in an amount which exceeds $12,000,000.00. After applying the deductible, CONSOL indicates that it has a covered business interruption claim of approximately $6,000,000.00 under the policies. (Compl. ¶¶ 77-80.)

Plaintiffs allege that Defendants' practice of disputing the language in the binders they issued and in the subsequently agreed-upon modifications delayed CONSOL's submission of a final claim with respect to losses incurred as a result of the fire until late 2003. (Compl. ¶¶ 84-85.) They further allege that, even after the policy language was finalized, Defendants continued to delay consideration of CONSOL's claim with respect to its losses and pay its claim. They point to three components of CONSOL's claim that they allege Defendants have disputed in bad faith: 1) a miscalculation of the Average Daily Value as it relates to the deductible on the Business Interruption claim; 2) a contention that there is no coverage for business lost as a result of the chain failures caused by the fire; and 3) a denial that CONSOL is entitled to recover under the Business Interruption Provisions for the labor costs incurred in paying its own employees to assist in returning the mine to production, even though it would have been entitled to recover payroll expenses for its workers performing their usual duties had it used outside contractors to perform the rehabilitation work. (Compl. ¶¶ 87-98.)

Plaintiffs also allege that Defendants have attempted to tie settlement of CONSOL's claim to the settlement of another claim filed by CONSOL under the policies and that they have offered to settle the dispute regarding calculation of the Average Daily Value and to provide coverage with respect to the lost business caused by the chain failures only if CONSOL agrees to submit the labor cost issue to arbitration. Finally, they allege that representatives of the

Defendants have expressly stated that they "just don't want to pay" on CONSOL's claim related to the mine fire. (Compl. ¶¶ 99-101.)

Procedural History

Plaintiffs initiated this action by filing a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania on January 20, 2005. Named as defendants were BH, National Fire and all of the insurance companies identified above that participated in the coverage. Count I seeks a declaratory judgment and injunction that CONSOL has binding policies of insurance, that it has complied with all conditions precedent to coverage (or that such conditions have been waived by Defendants), that an actual controversy exists with respect to Defendants' duties and obligations under the policies in that CONSOL is entitled to full payment of its claims with respect to losses it incurred as a result of the mine fire and that Defendants have continued to insist on an interpretation of terms and conditions with respect to its coverage of CONSOL which are inconsistent with the actual terms of the policies. Count II alleges that Defendants have breached the policies of insurance, that CONSOL detrimentally relied on the terms set forth in the policies which it believed provided it with insurance coverage, and that Defendants' conduct in continuing to dispute the policy language delayed consideration of CONSOL's claim. Count III alleges that Defendants breached their fiduciary duties under the policies. Count IV alleges that Defendants engaged in bad faith in violation of 42 Pa. C.S. § 8371.

On February 16, 2005, Defendants removed the action to this Court on the basis of diversity of citizenship and federal question jurisdiction.[3] The Notice of Removal asserted that BH had been fraudulently joined by Plaintiffs to defeat diversity jurisdiction. On February 22,

---

[3] The federal question basis for removal was based upon an arbitration agreement between CONSOL and XL under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which required that any disputes between these parties be resolved in arbitration in the United Kingdom. (Notice of Removal ¶¶ 8-14.) Because XL has been dismissed as a defendant in this action, no basis for federal question jurisdiction exists.

2005, National Fire demanded arbitration in accordance with the arbitration clause in the Policy Declarations. (Bonvalot Aff. Ex. G, Docket No. 34.)

On March 23, 2005, Plaintiffs filed a First Amended Complaint (Docket No. 18). The First Amended Complaint adds a fifth claim solely against BH for tortious interference with contractual relations.

On March 31, 2005, Plaintiffs filed a notice of dismissal pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure, which dismissed the claims against AWAC, CIC, IMIU, IICH, Lloyd's of London, HS, AU, RJK, and XL (Docket No. 20). The only remaining defendants are BH and National Fire.

On April 11, 2005, BH and National Fire both filed motions to dismiss. BH's motion is filed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). It contends that the Court cannot assert personal jurisdiction over it because it does not have the requisite contacts with the Commonwealth of Pennsylvania. BH also argues that Count V of the First Amended Complaint fails to state a claim against it for tortious interference with contractual relations.[4]

National Fire's motion is filed pursuant to Rule 12(b)(6). It contends that the policy required Plaintiffs to arbitrate any disputes. It therefore requests that the Court dismiss this action or stay it until arbitration proceedings have been completed and it requests that the Court compel arbitration pursuant to the clause in the Policy Declarations.

On April 15, 2005, Plaintiffs filed a motion for remand pursuant to 28 U.S.C. § 1447(c). They argue that: 1) there is no federal question jurisdiction because the claims against XL, which provided the only arguable basis for federal question jurisdiction, have been dismissed; 2) there is no diversity jurisdiction because both CONSOL and BH are Delaware citizens, and BH was

---

[4] In addition to these arguments, the motion also sought to quash insufficient service of process pursuant to Rule 12(b)(5). In their brief in opposition (Docket No. 30), Plaintiffs explained that they rectified the defect by sending registered mail to BH's principal place of business and to its agent. Although BH filed a reply brief, it did not address this issue further.

not fraudulently joined in this matter; and 3) the policy expressly waived any right Defendants had to remove this action.

Defendants respond that: 1) by amending the complaint, Plaintiffs waived the right to request remand; and 2) BH was fraudulently joined and without it complete diversity exists. In addition, BH argues that it did not sign the policy and therefore did not waive the right to remove. National Fire argues that the policy requires arbitration as a condition precedent to the right to sue under the contract.

### Removal and Remand

Defendants removed this action pursuant to 28 U.S.C. § 1441, which states that:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending....

28 U.S.C. § 1441(a). The Court of Appeals for the Third Circuit has held that:

> 28 U.S.C. § 1441 is to be strictly construed against removal, Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), so that the Congressional intent to restrict federal diversity jurisdiction is honored. This policy "has always been rigorously enforced by the courts." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

Samuel-Bassett v. Kia Motors of America, Inc., 357 F.3d 392, 396 (3d Cir. 2004). The court also reiterated that "[t]he party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." Id. (citation omitted). Thus, Defendants bear the burden of demonstrating that the removal of this action was proper.

### Waiver of Right to Remand

As an initial matter, Defendants contend that Plaintiffs have waived the right to remand this action by filing an amended complaint. They cite Koehnen v. Herald Fire Insurance Co., 89 F.3d 525, 528 (8th Cir. 1996), and Johnson v. ODECO Oil & Gas Co., 864 F.2d 40, 42 (5th Cir.

1989), in support of their position.  In Koehnen, the court held that a plaintiff waived the right to challenge a removal based on a procedural defect (specifically, the fact that the defendants filed their notice of removal more than 30 days after receiving a copy of the initial pleading setting forth the claim) by seeking leave to file an amended complaint, vigorously arguing the motion and only upon losing it (which was essentially a dispositive order on the case) seeking to remand the case back to state court in order to obtain a "second bite at the apple."  In Johnson, the court concluded that a plaintiff who failed to object to the removal of his Jones Act case for over a year while he attended depositions noticed by the defendants and amended his complaint to add additional defendants waived his right to remand the case to state court.

However, the Court of Appeals for the Third Circuit has never adopted the rule that amending a complaint constitutes such "affirmative action" that a plaintiff is deemed to have waived the right to request remand.  See Cook v. Wikler, 320 F.3d 431, 438 (3d Cir. 2003) (noting that Johnson and other cases were applying "essentially a specific form of laches recognized by some Circuits to deny remand where a plaintiff has failed to diligently pursue its remand rights...").  The Koehnen and Johnson cases are also distinguishable in that the plaintiffs did more than merely file an amended complaint: one filed and vigorously argued a motion for leave to amend and the other participated in discovery for over a year.

Moreover, even if the Court of Appeals were to adopt this rule in general, it would not apply it in this case because Plaintiffs acted pursuant to an order of this Court.  On March 18, 2005, the Court entered an order granting a consent motion filed by all parties for an extension of time (Docket No. 16) and giving Plaintiffs until April 15, 2005 to file a motion to remand raising any defect other than lack of subject matter jurisdiction.  Plaintiffs properly raised their arguments in the motion for remand filed on April 15, 2005.

Improper Removal Based on Clause in Policy

Plaintiffs argue that National Fire's removal of this case was improper because it waived the right to remove in the policy. National Fire argues that Plaintiffs cannot invoke the clause in the policy because they failed to satisfy a condition precedent, namely submitting the case to arbitration.

The "Property Insurance Specification" prepared by CONSOL and Marsh contained a provision entitled "Suit Against the Company," which stated as follows:

> It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law. The Company shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the Insured in any such court.

(Compl. Ex. A ¶ 34.) This provision remained in the policy even when National Fire sent CONSOL revised versions in March and April 2003. (Snover Aff. ¶ 4 & Ex. 4 ¶ 34; Compl. Ex. E ¶ 34.) It was never removed.

The Court of Appeals has held that defendants may waive the right to remove by virtue of a forum selection clause in a contract. Foster v. Chesapeake Ins. Co., 933 F.2d 1207 (3d Cir.1991). The court indicated that a court "should determine contractual waiver of the right to remove using the same benchmarks of construction and, if applicable, interpretation as it employs in resolving all preliminary contractual questions." Id. at 1217 n.15. In that case, the clause stated that the defendant "will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction; and all matters arising hereunder shall be determined in accordance with the law and practice of such court." Id. at 1216 (footnote omitted). The court concluded that the

district court had properly held that the effect of the clause was to waive the defendant's right to remove the case from state court, the forum chosen by the plaintiff. Id. at 1217-19.

In this case, the clause contained the same language as the clause in Foster plus an additional sentence stating that National Fire "shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the Insured in any such court." Thus, it unambiguously waived any right National Fire had to remove an action filed by CONSOL in state court. National Fire does not contend that the clause is ambiguous or unclear.

Rather, it argues that it was somehow not required to comply with this provision of the policy because Plaintiffs filed an action in state court without complying with a condition precedent of submitting the matter to arbitration. This argument is unavailing for two reasons. First, it presupposes that National Fire has prevailed with respect to its contention that the parties agreed to include an arbitration clause in the policy. In fact, that issue is vigorously contested by Plaintiffs and National Fire has not explained why the Court should have to delve into this complicated issue in order to resolve the threshold question of whether the case was properly removed from state court.

More significantly, the argument about the arbitration clause is irrelevant. Regardless of the resolution of the arbitration issue, the policy clearly prohibited National Fire from removing the case. National Fire's remedy for Plaintiffs' alleged failure to comply with the arbitration clause in the policy would have been to file a motion to dismiss or stay and compel arbitration in the Court of Common Pleas, not to remove the case to federal court. National Fire's suggestion that it could ignore the contractual provision that expressly prohibited removing the case because Plaintiffs had not complied with the arbitration provision is the equivalent of arguing that "two wrongs make a right."

<u>The Rule of Unanimity</u>

Berkshire Hathaway argues that it is not bound by the clause in the policy prohibiting National Fire from removing because it was not a party to the contract and it is not the alter ego of National Fire. This argument is irrelevant. As cogently stated by one district court:

> the issue is not, as the defendants contend, whether [other defendants] are bound by the forum selection clause in the Note and the Deed of Trust because that is not determinative of whether this action can be removed even if the court concluded that they were not bound. Rather, the issue is whether the forum selection clause in the Note and the Deed of Trust prevents defendant 1111 LP from joining in or consenting to the removal of this action and, thereby, preventing these defendants from removing this action under § 1446.

<u>SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.</u>, 916 F. Supp. 1118, 1119-20 (D. Kan. 1996), <u>rev'd on other grounds</u>, 105 F.3d 578 (10th Cir. 1997).

In other words, because National Fire waived its right to remove in the policy, the rule of unanimity was violated. As the Court of Appeals has explained: "Section 1446(a) of 28 U.S.C. requires that '[a] defendant or defendants desiring to remove any civil action ... shall file ... a notice of removal.' Despite the ambiguity of the term 'defendant or defendants,' it is well established that removal generally requires unanimity among the defendants." <u>Balazik v. County of Dauphin</u>, 44 F.3d 209, 213 (3d Cir. 1995) (citations and footnote omitted).

Ordinarily, this issue arises when one or more defendants do not give their consent to remove a case. <u>Id.</u> at 211 n.2. In this instance, National Fire not only consented to the removal of the case, but it was one of two defendants who filed the Notice of Removal in the first instance. The Notice of Removal was filed by National Fire and XL, with the notation that all of the other defendants consented to the removal. <u>See</u> Docket No. 1 at 1. Nevertheless, National Fire's joinder in the removal of this action was void because of the clause in the policy, as explained above.

When one defendant has waived its right to remove by virtue of a clause in a contract, the entire case becomes unremovable because the defendants cannot satisfy the rule of unanimity. The Court of Appeals for the Eleventh Circuit addressed this precise issue in Russell Corp. v. American Home Assurance Co., 264 F.3d 1040 (11th Cir. 2001), a case with facts almost exactly like those presented here. In that case, the plaintiff (Russell) brought suit against 23 insurance companies, seeking a determination that they breached their obligations to defend and indemnify it with respect to two civil actions for property damage and personal injury allegedly caused by Russell. Two of the insurers timely removed the case, but Russell pointed out that one of the insurers (First State) had a service of suit clause in its policy and argued that First State's consent to removal was void. The district court granted Russell's motion to remand and the court of appeals affirmed. After concluding that the service of suit clause (which was nearly identical to the one at issue in the Foster case) waived First State's right to remove, the Eleventh Circuit held that the district court properly found that the insurers failed to comply with the unanimity requirement and remanded the action to state court. Id. at 1049-50.

"Like all rules governing removal, th[e] unanimity requirement must be strictly interpreted and enforced because of the significant federalism concerns arising in the context of federal removal jurisdiction." Russell, 264 F.3d at 1049. See also Samuel-Bassett, 357 F.3d at 403 ("in order to carry out the Congressional intent to limit jurisdiction in diversity cases, doubts must be resolved in favor of remand.")

Because removal of this case was improper, it should be remanded to the Court of Common Pleas of Allegheny County, Pennsylvania. The motion to dismiss filed by BH and the motion to dismiss or stay and compel arbitration filed by National Fire should be dismissed as moot. Defendants can reassert these motions in that court if they so choose.

For these reasons, it is recommended that the motion for remand submitted on behalf of Plaintiffs (Docket No. 26) be granted and that this case be remanded to the Court of Common Pleas of Allegheny County, Pennsylvania.  It is further recommended that the motion to dismiss submitted on behalf of Defendant Berkshire Hathaway Inc. (Docket No. 21) and the motion to dismiss or stay and compel arbitration submitted on behalf of Defendant National Fire & Marine Insurance Company (Docket No. 23) be dismissed as moot.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

        Respectfully submitted,

        /s/   Amy Reynolds Hay
        AMY REYNOLDS HAY
        United States Magistrate Judge

Dated:   8 February, 2006


cc:    Hon. Joy Flowers Conti
      United States District Judge

      Robert M. Vukas
      Consol, Inc.
      1800 Washington Road
      Consol Plaza
      Pittsburgh, PA 15241

      Christopher Mickus
      Mark A. Rabinowitz
      Neal, Gerber & Eisenberg
      Two North LaSalle Street
      Suite 2300
      Chicago, IL 60602

Constantino P. Suriano
Frank J. DeAngelis
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
9th Floor
New York, NY 10004-1486